IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUANITA GÓMEZ-MILLÁN,<br><br>Petitioner,<br><br>v.<br><br>JOHN DOE, WARDEN OF THE SAN JUAN STAGING FACILITY, ET AL.,<br><br>Defendants. | CIV. NO.: 26-1583 (SCC) |

**OPINION AND ORDER**

Pending before the Court is Petitioner Juanita Gómez-Millán's ("Ms. Gómez-Millán") Petition for Writ of Habeas Corpus (the "Petition"), Docket No. 1, and Motion for Temporary Restraining Order (the "TRO"), Docket No. 3. For the reasons set forth below, the Court **GRANTS in part and DENIES in part** the TRO and **HOLDS IN ABEYANCE** the Petition. Further, the Court hereby **ORDERS** that the Government, including its agencies, and employees shall not transfer Ms. Gómez-Millán outside of the jurisdiction of Puerto Rico so that she can be afforded a bond hearing before an Immigration Judge under the Department of Justice's Executive Office for Immigration Review ("EOIR") in Puerto Rico.

## I. BACKGROUND

Ms. Gómez-Millán is a citizen of Colombia. Docket No. 3, pg. 3. She "entered the United States on a B-1/B-2 visa on December 15, 2020, and was admitted as a B-2 visitor until June 14, 2021. *Id.* Pending before the United States Citizenship and Immigration Services ("USCIS") is a petition for asylum filed by her father and listing her as a "derivative applicant." *Id.*

On September 4, 2026, Ms. Gómez-Millán was detained by federal law enforcement officers when she attempted to board a flight at the San Juan airport. *Id.* She was then taken to the ICE office located in Guaynabo. *Id.* There she was reportedly informed that if she did not take voluntary departure, a Notice to Appear would be filed with the Immigration Court. *Id.* It appears she did not take voluntary departure and was therefore taken to civil immigration custody and ultimately, to the San Juan Staging Facility in Guaynabo, where she remains detained. *Id.* at pg. 4. Further, she is still waiting for a determination regarding her request for a bond hearing. *Id.* That request was filed on September 7, 2026. *Id.* Also on that same day, she claims that ICE officers informed her that she would be transferred to an ICE detention center in Florida. *Id.*

On September 8, 2026, Ms. Gómez-Millán filed the Petition. Docket No. 1. There, she claims that her detention at

the airport was an unreasonable seizure that violated her rights under the Fourth Amendment. *Id.* at pgs. 5-7. Further, she contends that her detention violates her substantive and procedural due process rights under the Fifth Amendment to the United States Constitution. *Id.* at pgs. 7-10. She also seeks a TRO prohibiting her transfer out of the District of Puerto Rico and instructing her immediate release from where she is currently detained. Docket No. 3.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(b) controls the issuance of a TRO, which may be issued *ex parte* and is of limited duration since it may remain in effect for up to 14 days. *See* Fed. R. Civ. P. 65(b).[1] However, like a preliminary injunction, a TRO is "an extraordinary and drastic remedy that is never awarded as of right." *People's Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). In order for a court to grant a TRO, a plaintiff "'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public

[1] Rule 65(b)(2) empowers the Court to extend the duration of the TRO "for a like period or [if] the adverse party consents to a longer extension." *See* Fed. R. Civ. P. 65(b)(2).

interest.'" *Id.* at 9 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).[2] The movant "bears the burden of establishing that these four factors weigh in its favor." *Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) (citing *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003)).

## III. ANALYSIS

### a. Likelihood of Success on the Merits

The INA empowers the Government to detain certain noncitizens, either on a mandatory or discretionary basis. Two statutory provisions control this process: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs the detention of noncitizens "who are applicants for admission or otherwise seeking admission" to the United States. *Id.* § 1225(a)(3). Under Section 1225, if a noncitizen is deemed inadmissible "the [noncitizen] shall be detained for a [removal] proceeding under section 1229a." *Id.* § 1225(b)(2)(A).

In contrast, Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in

[2] Rule 65(c) instructs "the movant [to] give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court will not order Ms. Gómez-Millán to do so here. *See Int'l Assoc. of Machinists and Aerospace Workers v. E. Airlines*, 925 F.2d 6, 9 (1st Cir. 1991) (recognizing the existence of "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond").

the United States and eligible for removal." *Rodríguez Díaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Noncitizens who are "arrested and detained pending a decision on [their] remov[al]" face three discretionary outcomes as to their detention: the Attorney General "may continue to detain the arrested [noncitizen]"; "release the [noncitizen] on bond of at least $1,500"; or "release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). However, if a noncitizen is involved in specific enumerated criminal activities, their detention is mandatory. *Id.* § 1226(c)(1). Importantly, unlike Section 1225, "noncitizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to receive a bond hearing." *Brito v. Garland*, 22 F.4th 240, 244 (1st Cir. 2021); *see also Rodríguez Díaz*, 53 F.4th at 1202 (noting that Section 1226(a) provides "extensive procedural protections [such as] an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change").

Given that Section 1226(a) governs the detention of noncitizens who are arrested and detained while residing in the United States, and Ms. Gómez-Millán has represented that she has no criminal history of violence, which could otherwise subject her to the mandatory detention exception, at this time, the Court finds that its discretionary detention regime is

applicable here.

As noted, Section 1226(a) entitles a noncitizen to an initial bond hearing, during which the Government bears the "burden of proving either dangerousness or flight risk in order to continue detaining [the noncitizen]." *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021). Indeed, a 2025 Board of Immigration Appeals ("BIA") decision, *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220–28 (BIA 2025), held that Immigration Judges lack jurisdiction to consider a bond request filed by noncitizens who are present in the United States without admission. However, district courts have routinely rejected *Matter of Yajure Hurtado*'s interpretation and upheld the right to a bond hearing under circumstances akin to those of Ms. Juanita Gómez-Millán. *See, e.g.*, *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 29 n.11 (D. Mass. 2025); *Elias Escobar v. Hyde*, No. 25-CV-12620, 2025 WL 2823324, at *3 (D. Mass. Oct. 3, 2025); *Lora-Salazar v. Ripa*, No. 26-CV-1014 (D.P.R. Jan. 13, 2026) (Docket Nos. 5, 13); *González-Rucci v. González-Ramos*, No. 26-CV-1045 (D.P.R. Jan. 29, 2026) (Docket No. 12). Importantly, earlier this month, the First Circuit, in *Guerrero Orellana v. Moniz*, Nos. 25-2152, 26-1094, 2026 WL 2352042, at *11 (1st Cir. Aug. 13, 2026), held that Section 1226 governs the detention of "noncitizens" in a position akin to Ms. Gómez-Millán's, "who are present in the United States without admission[.]"

At this time, the Court finds that Ms. Gómez-Millán therefore has shown that she is entitled to a bond hearing, because her detention falls under the purview of Section 1226, not Section 1225. Transferring her out of this jurisdiction a ruling regarding whether she will (or will not) be afforded a bond hearing, would defeat the framework in place. Accordingly, the Court finds that she has demonstrated a strong likelihood of success on the merits.

**b. Irreparable Harm**

"[An] injunction should issue only where [it is] essential in order effectually to protect [] rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). Here, the "irremediable" harm would be threefold: detention; removal from this Court's jurisdiction pending the habeas corpus proceedings; and the subsequent consequences that such removal would have on Ms. Gómez-Millán's person and rights. Without a bond hearing, Ms. Gómez-Millán faces a potentially prolonged period of detention, depriving her of her liberty. She has already been detained for six days even though the factual predicate presented to the Court shows that she falls under § 1226's purview, but she has not been afforded a bond hearing. As such, the Court finds this factor weighs in Ms. Gómez-Millán's favor.

### c. Balance of Equities and Public Interest

The remaining TRO factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The First Circuit has repeatedly held that where, as here, the Government is likely acting contrary to the plain text of federal law, the balance of equities weighs against it. *See New York v. Trump*, 133 F.4th 51, 71 (1st Cir. 2025); *New Jersey v. Trump*, 131 F.4th 27, 40–41 (1st Cir. 2025). Relatedly, it is well-settled that "there is generally no public interest in the perpetuation of unlawful agency action." *Rhode Island v. Trump*, 155 F.4th 35, 50 (1st Cir. 2025). In conclusion, the Court finds that the remaining factors also weigh in Ms. Gómez-Millán's favor.

## IV. CONCLUSION

To conclude, the Court must clarify the following. The request for a TRO includes a request for Ms. Gómez-Millán's immediate release. *See* Docket No. 3, pg. But granting that specific request would be tantamount to granting the ultimate relief that is requested in the Petition. A TRO is not the prober vehicle to obtain such relief. Accordingly, this Court **GRANTS in part and DENIES in part** the TRO and **HOLDS IN ABEYANCE** the Petition. This Court **ORDERS** that the Government shall not transfer Ms. Gómez-Millán outside of Puerto Rico and that she be granted a bond hearing before an Immigration Judge on or before **September 23, 2026.** The

Government shall inform by **September 24, 2026** (within 14 days of the issuance of this Opinion and Order) whether such bond hearing has been held and its outcome. To be clear, this Order grants only temporary injunctive relief and does not adjudicate the merits of the Petition.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th day of September 2026.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE